# ALMA LARSON EGERDAHL v. JOHN O. LARSON AND ANOTHER.[1]

June 20, 1924.

No. 24,015.

**Contract for cutting timber not extended.**
1. In an action to recover treble damages for the wilful cutting of timber upon the land of another, *held* that a finding of the jury that a written contract for cutting of timber the former season had not been extended, is warranted by the evidence.

**Rulings on evidence.**
2. Rulings upon the admissibility of evidence considered and *held* not error.

**Denial of new trial sustained.**
3. The refusal to grant a new trial on account of newly-discovered evidence was, under the showing, within the discretion of the trial court.

**Treble damages sustained.**
4. The evidence was ample to support a verdict for treble damages.

Action in the district court for Itasca county to recover $15,000. The case was tried before Wright, J., who at the close of the testimony denied defendants' motion to direct a verdict against them for $840, and a jury with returned a verdict for $2,292. From an order denying their motion for judgment in favor of plaintiff for $840 notwithstanding the verdict, or for a new trial, defendants appealed. Affirmed.

*W. T. Taylor*, for appellants.
*Alfred L. Thwing*, for respondent.

QUINN, J.
Action to recover treble damages for the wilful and unlawful cutting and removal of timber from plaintiff's land. The answer

[1]Reported in 199 N. W. 889.

is a general denial and an offer of judgment for the reasonable value of the timber cut and removed during the logging season of 1920-1921, not exceeding the sum of $840, justifying such cutting and removal under an alleged oral extension of a contract covering the preceding logging season. A trial resulted in a verdict of $2,292 in favor of plaintiff. From an order denying their motion for judgment in favor of plaintiff for $840, or for a new trial, defendants appealed.

Plaintiff is the step-daughter of the defendant Larson, was 31 years of age at the time of the trial, and had been married to J. M. Egerdahl about one year. She had lived at home with her mother most of her life, was unacquainted with doing business, but, in the fall of 1919, had succeeded in proving up on her government homestead, the land upon which the timber in question stood. Being in need of money, plaintiff, in company with the defendant Larson, went to Reid's office on November 28, 1919, and entered into a contract with Reid, selling to him all of the merchantable timber standing on her land which he might cut and pile on the bank of the Bigfork river during the logging season of 1919,1920, for which Reid was to pay her at the rate of $5 per thousand feet for pine and spruce logs and $1.50 for other kinds of wood, board measure.

Reid then entered into an agreement with Larson, whereby he was to cut and land logs on the bank of the river, and for which he was to receive $11 per thousand for pine, $9 for spruce, and $8.50 for the other kinds of wood. Larson entered upon the performance of his contract, and, by the end of the logging season in the spring of 1920, had landed on the bank of the river something like 190 thousand feet, for all of which both he and the plaintiff received pay as per their contracts.

In the fall of 1920, as the logging season of 1920-1921 opened, Larson commenced to cut more timber. The plaintiff testified that as soon as she learned of this cutting she went to him and forbade his cutting or removing any more timber and that he told her that he had bought the stumpage and the timber was all his. She further testified that she went also to Mr. Reid and forbade his cutting any more timber under the old contract, and told him

that if he wanted to cut more he would need a new contract with her as the values of timber had gone up since the expiration of the former contract. The defendants offered testimony tending to show an extension of the contract of November 28. However, we think the testimony made a question for the jury upon that issue, which by the verdict was resolved against the contentions of appellants.

There is no controversy but that the appellants cut most of the timber standing on the land at the beginning of the logging season of 1920-1921, and landed the greater portion thereof on the bank of the river and that the plaintiff has not received pay therefor. The defendants do not deny the cutting and removal of timber to the value of $840. What they claim is that they had a right to cut and remove the same under a verbal extension of the contract of November 28, 1919, and that the reasonable value of the timber so removed did not exceed the price mentioned in the contract, and therefore they are not liable for treble the value thereof under the statute.

Section 8090, G. S. 1913, provides that whoever without lawful authority cuts down or carries off any trees or timber on or from the land of another person, is liable in a civil action to the owner of such land for treble the amount of damages which may be assessed therefor, unless upon the trial it appears that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land was his own, in which case judgment shall be given for only single damages.

It is clear that plaintiff was inexperienced in business affairs. Her life had been spent largely in assisting her mother at housework. Each of the defendants were long experienced in timber and logging transactions. There could have been no misapprehension on their part as to the closing of the logging season of 1919-1920, nor of the need on their part of a valid extension of that contract if they wished to operate under it during the season of 1920-1921. If there were no extension of the terms of the contract, then they must have known that the cutting and removal of timber by them from plaintiff's land during the second season was without authority of law and a wrongful act. The plaintiff's

testimony bearing upon this phase of the case was direct and positive, and that of the appellants to the contrary. The finding of the jury is final.

There is confusion as to the terms upon which Larson was to do the logging during the second season. Larson contends that the arrangement was no different than the one he had for the former season, while Reid claims that he was to pay Larson the amount per thousand which he was paying generally for timber so delivered during that season, less the stumpage charge, which price he contends was no higher than it was during the fall of 1919. Reid further contends that operating expenses had advanced and that he had so informed plaintiff in the fall of 1920. Under these circumstances the trial court allowed the several statements and reports which had passed between the parties to come in as evidence. We see no harm in this. It tended to enlighten rather than to confuse the jury. There was no reversible error in plaintiff receiving from her mother certain documents such as scale bills, prices, etc., relating to the settlement between the defendants of the logging of the second season, which were later offered in evidence. It is a fair inference that the amount the one agreed to pay and the other to receive was reasonable.

The motion for a new trial is based largely upon newly discovered evidence and upon the fact that the evidence did not warrant the submission of the question of treble damages to the jury and was not sufficient to support the verdict. We are satisfied not only that the trial court was clearly within its discretion in refusing a new trial upon the ground of newly discovered evidence, but that there was ample proof to warrant the jury in finding treble damages.

Affirmed.